UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:15-CR-132 |
| | ) | |
| CHARLES LEE LOFTLY | ) | |

**MEMORANDUM AND ORDER**

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i), as supplemented. [Docs. 260, 259, 262]. The United States has responded in opposition [docs. 263, 264], and the defendant has not replied within the time allowed by this Court's Local Rules. For the reasons that follow, the motion will be denied.

**I.     BACKGROUND**

In June 2017, this Court sentenced the defendant to a 130-month term of imprisonment for his role in a cocaine base distribution conspiracy. The defendant is presently housed at FCI Gilmer with a projected release date of March 29, 2025. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 2, 2021). He now moves for compassionate release due to the COVID-19 pandemic, a prior intestinal blockage, hypertension, back problems, a prior heart attack, injuries relating to a prior gun shot and stabbing, his rehabilitative efforts, and the needs of his handicapped child. [Doc. 150, p. 2].[1]

---

[1] The defendant also raises arguments pertaining to his conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned

---

the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). There is no evidence that this defendant has exhausted his administrative remedies on those claims, nor is he incarcerated in this judicial district.

to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[2] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and that more than 30 days have passed since that request was received by the warden. [Doc. 260]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, a prior intestinal blockage, back problems, hypertension, a prior heart attack, injuries relating to a prior gun shot and stabbing, his rehabilitative efforts, and the needs of his handicapped child.

Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments (individually and in combination) along with the

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

3

broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
>     (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
>     (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
>   . . .
>
> (5) any pertinent policy statement—

> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's correctional institution, there are currently zero inmates and zero staff positive for COVID-19, with 291 inmates and 73 staff having recovered, and one inmate death. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 2, 2021). These numbers are historically significant, but the Court simultaneously notes that outside the prison setting our nation remains on alert in terms of COVID diagnoses, hospitalizations, deaths, emerging variants, and grossly inadequate vaccination rates. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, the BOP's vaccination efforts are underway, with 142 staff and 1,081 inmates having been fully vaccinated at the defendant's prison. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 2, 2021). In fact, as of March 23, 2021, the defendant himself is fully vaccinated. [Doc. 264].

BOP medical records show that the defendant has been diagnosed with hypertension. [*Id.*]. He is obese. [*Id.*]. Additionally, in November 2020 and January 2021, the defendant complained of constipation. [*Id.*]. He was given medication and was counseled to increase his fluid and fiber intake. [*Id.*]. February 2021 abdominal imaging showed "scattered buckshot metallic BBs projecting over the abdomen." [*Id.*]. A 2011 disability examination noted prior complaints of high cholesterol, a prior gunshot, and a prior stabbing. [*Id.*].

The BOP's SENTRY Report shows that the defendant is categorized as Care Level 2. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited July 2, 2021).

Obesity and hypertension are conditions which "can" create an increased risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 2, 2021). Nonetheless, the Court concludes that the defendant has not carried his burden of demonstrating extraordinary and compelling

6

grounds for compassionate release. The defendant is receiving medical care from the BOP, and his cited medical conditions simply do not rise to the level of being "extraordinary and compelling." Further, there are presently no diagnosed cases of COVID-19 among the inmate population at the defendant's prison and he is now fully vaccinated against the virus, thereby significantly reducing his odds of contracting it.[3] [4]

Alternatively, compassionate release in this case would not be consistent with the 18 U.S.C. § 3553(a) factors, although the Court will begin its discussion of those factors on a positive note. The Court is impressed with the defendant's post-offense rehabilitative efforts. According to SENTRY, he has been serving his present sentence for more than five years and has incurred no disciplinary sanctions. In August 2020, he earned his GED. The defendant is a participant in the BOP's nonresidential drug treatment program and he is involved in other educational and vocational courses. The Court's faith in the defendant's rehabilitative intentions is bolstered by the facts set forth in the United States' June 2017 sentencing memorandum. [Doc. 175].

However, the defendant's offense conduct, paired with his criminal history, stands as a roadblock to his compassionate release. In this case, the defendant was "one of the area's most significant drug dealers." [Presentence Investigation Report, doc. 35, ¶ 14]. He was

---

[3] The Court recognizes the defendant's argument that the protections afforded by his current vaccine will not be permanent. As noted above, however, "*speculation* as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release." *Shah*, 2020 WL 1934930, at *2 emphasis added).

[4] The Court has also considered the defendant's desire to help with the care of a disabled child. The record, however, contains no documentation of the child's specific needs or the unavailability of other means of care. This Court regularly sentences persons who leave behind vulnerable family members. Sadly, this is not an extraordinary and compelling occurrence.

involved in "a wide range of drug activity" and was conservatively held accountable for the distribution of more than 6,000 grams of cocaine base, causing incalculable harm to this region. [*Id.*, ¶¶ 33, 48]. At sentencing, he received upward adjustments for aggravating role and for maintaining a premises for the purpose of drug distribution, and he was deemed a Career Offender. [*Id.*, ¶¶ 61, 63, 66]. There are prior convictions for second degree burglary, first degree harassment, second degree coercion, weapons possession, possession of a forged instrument (with disturbing underlying facts), first degree assault (originally charged as attempted second degree murder), facilitation of heroin distribution, and sale of cocaine base. [*Id.*, ¶¶ 72-76, 79-80]. There have been prior revocations of probation and parole, along with a conviction for failure to appear. [*Id.*, ¶¶ 72, 76, 78-80, 82, 84].

The Tennessee Department of Correction has noted that the defendant is, or was, a gang member. [*Id.*, ¶ 91]. There is a longstanding history of substance abuse. [*Id.*, ¶ 95]. Pre-existing conditions including obesity, hypertension, high cholesterol, stomach problems, sleep apnea, a purported prior heart attack, and the above-noted shooting and stabbing were not enough to prevent the defendant's substantial participation in the instant conspiracy. [*Id.*, ¶ 93]. Lastly, the defendant has only served slightly more than half of the sentence imposed by this Court. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate.").

Compassionate release on these facts would not reflect the seriousness of the offense of conviction and the defendant's broader criminal history, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect

the public from future crimes.  The pending motion must therefore be denied.

## III.   CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 260] is **DENIED**.

Two final notes relating to the defendant's rehabilitative efforts.  The Court restates its sentencing recommendation that the BOP provide the defendant with the opportunity to participate in its Residential Drug Abuse Program.  The Court further recommends that the BOP, at the appropriate time and within its ultimate discretion, afford the defendant the maximum available halfway house placement in order to assist with his successful transition back into his community.

**IT IS SO ORDERED.**

ENTER:


s/ Leon Jordan
United States District Judge